IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID "Nolove Nocap", THAT IS STORED AT PREMSIES CONTROLLED BY FACEBOOK, INC. | Case No. 3:21MJ5192<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, ATF TFO Daniel Van Vorhis, being duly sworn, hereby depose and state as follows:

**I. Introduction and Agent Background**

I am a Parole Officer with the Ohio Department of Rehabilitation and Corrections and have been since May 1994. Further, I am currently a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearm and Explosives ("ATF"), out of the Toledo, Ohio Field Office, and have been since July 2018. I have been a sworn law enforcement officer since 1991. As part of my current duties as an ATF Task Force Officer, I investigate criminal violations relating to federal firearm offenses. I have conducted or participated in numerous investigations involving persons who illegally possess firearms. Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States. As a result of my training and experience, I am familiar with federal laws including 18 U.S.C. 922(g)(1), which states: It shall be unlawful for any person who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Facebook, a social network provider located at 1601 Willow Road, Menlo Park, California 94025. The account to be searched is "Nolove Nocap", with a URL, *https://m.facebook.com/nolove.nocap?tsid=0.9997512724062725&source=result* as accessed on October 22, 2020 (hereinafter, "**Subject Account**"), which is further described in the following paragraphs and in Part II of Attachment A. As set forth below, there is probable cause to believe that in the account there exists evidence of violations of Title 18 United States Code, Sections 922(g)(1) – Felon in Possession of a Firearm (hereinafter, "**Subject Offense**").

The statements in this affidavit come from my personal knowledge, training and experience, police reports, and information obtained from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause that believe that evidence of violations of the **Subject Offense** are in the **Subject Account**.

## II. Facebook Inc., purpose functions, and storage abilities

Based on my training and experience, I have learned the following about Facebook:

1. Facebook owns and operates a free- access social networking website that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts within Facebook. Users can then use their accounts to save, publish and share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

2

2. Facebook asks users to provide basic contact information during the registrations process or thereafter. This information may include the user's full name, birthdate, contact e-mail address, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a unique user identification number to each account.

3. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to limited Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

4. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for the purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of what user's "Friends" and "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

5. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events,"

such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also includes a "Wall," which is space where the user and "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

6. Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (*i.e.*, label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with the user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them. Photos taken by a digital camera or smartphone typically include an Exchangeable Image File ("EXIF") data, which often includes the date, time, type of device, and geolocation for the photo. Facebook removes EXIF data from photos that are uploaded by users, but retain a copy of that information.

7. Facebook users can exchange private messages on Facebook with other users. These messages, like e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can post comments on the Facebook profiles of others or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature. Facebook does not record the calls, but does keep records of the date of each call.

9. Facebook has a "like" feature that allows users to give positive feedback or connect to pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of Facebook pages.

10. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

11. Each Facebook account has an activity log, which is a list of the user's posts and activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

12. A Facebook user may opt for "notifications" of many of the above listed events (*e.g.*, receiving a message or a friend request) to be sent to an email address associated with the user's Facebook account. From personal experiences, I know that in the case of messages, this "notification" email includes the entire text of the message from the user's Facebook Inbox.

13. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, Live Journal, and Blogger.

14. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can attach to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that the user has been "poked" by the sender.

5

15.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post products for sale, housing, jobs, and other items on the Marketplace.

16.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application ma appear on the user's profile page.

17.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification number; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past events postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

18.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the types of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, the user's IP log would record that the user viewed the profile and which IP address was used to view it.

19.     Facebook keeps records that can reveal accounts accessed from the same electronic device, such as the same computer or mobile number, including accounts that are linked by "cookies," which are small pieces of text sent to the user's Internet browser when visiting websites.

20. Facebook retains additional information about their users' account, such information about the length of service (including start date), the types of services utilized, and the means and source of any payments associated with the services (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Facebook retains records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user because of the communications.

21. On or about October 22, 2020, your affiant served Facebook with a preservation request pursuant to 18 U.S.C. Section 2703, requiring Facebook to preserve all information associated with **Subject Account**.

22. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application. In order to accomplish the objectives of the search warrant with a minimum of interference with the business activities of Facebook, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Facebook to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or an authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

### III. Probable Cause to Search Subject Account

23. On May 11, 2016, WYSINGER was convicted of Burglary, a felony of the second degree, in Lucas County Common Pleas Court Case # CR0201601431, and is therefore prohibited from possessing a firearm pursuant to 18 U.S.C. 922(g)(1). Further WYSINGER is currently on Post Release Control (PRC) Supervision by the Ohio Adult Parole Authority from that conviction. He was released from the Ohio Department of Rehabilitation and Corrections on 7/22/2020 and placed on PRC for a term of 3 years.

24. On October 13, 2020, Parole Officer (PO) Amanda Barrick contacted affiant about WYSINGER being in possession of a firearm. PO Barrick explained that she received a picture of WYSINGER standing in a store holding an AR style rifle from his Facebook account, under the user name "Nolove Nocap". Affiant reviewed this photo and recognized that the photo was taken at store Towers Armory, a federally licensed firearms dealer.

25. On October 15, 2020, affiant went to Towers Armory at 1469 Towers Road, Oregon, Ohio 43616 and spoke with manager Tim Hensley. In store video was reviewed. Affiant and store personnel were able to find the date and time when WYSINGER entered the store. Video shows that on September 15, 2020, WYSINGER drove a smaller white SUV into the Towers Armory parking lot. A female, later identified as Taiesha THOMAS, and two younger males got out of the vehicle and walked into Towers Armory. Approximately 6 minutes later, WYSINGER enters the store.

26. In reviewing the video, THOMAS enters the retail area of the store and immediately walks up to the counter and begins looking at handguns. The two males with her were later identified by her as being her sons, Marvonte COLLINS, and Nasir THOMAS. After THOMAS and her sons' were in the store looking at guns for approximately 6 minutes, WYSINGER enters

8

the retail area of the store. WYSINGER at first wanders around the store and avoids THOMAS and her sons. WYSINGER also goes up to the counter and begins looking at handguns. WYSINGER asks store personnel for assistance in examining and handling some guns. WYSINGER then walks up to a rack of AR style rifles and begins handling them. At this point, THOMAS and her son begin talking with WYSINGER. Then, THOMAS takes photos on her cell phone as WYSINGER poses with the firearm. These pictures were the same ones WYSINGER posted on his Facebook page.



27. THOMAS purchased a Girsan 9 mm Model MC28SA handgun, Serial # T6368-17AV27388, and a Glock 9 mm model 43X, Serial # BNN2092. THOMAS filled out the necessary ATF forms. The two guns and two boxes of ammo were at first carried by THOMAS. However, WYSINGER did took the guns and ammo from THOMAS while walking towards the exterior door of the store. The group proceeded to walk out into the parking lot and to their vehicle. WYSINGER placed the guns and ammo in the rear hatch area of the SUV. THOMAS got into the

driver's seat, and WYSINGER got into the front passenger seat. THOMAS's' sons got into the back seat. A copy of store video was downloaded by Towers Armory and provided to affiant.

28. On October 22, 2020, APA Officer Barrick, Officer Gentene, Officer Boyer, and affiant went to WYSINGER's APA approved residence. WYSINGER was not there, but called PO Barrick a short time later and said he would meet with her at 1932 Calumet, Toledo, OH. Taiesha THOMAS lives at the Calumet residence.

29. Officers went to 1932 Calumet and WYSINGER was standing in the front yard. He was detained and affiant explained to WYSINGER that officers were investigating a violation of his PRC conditions. Affiant and Officer Gentene spoke with THOMAS in the driveway of 1932 Calumet.

30. THOMAS gave affiant and Officer Genetene consent to enter her residence and produced the guns she purchased at Towers Armory. Since she was not prohibited from purchasing or possessing these guns, they were photographed and left at the residence under her care.

31. Affiant attempted to talk with WYSINGER. However, he quickly became argumentative and expressed his dislike for me. WYSINGER was placed under arrest for being in violation of his parole and transported to the Lucas County Jail by APA. WYSINGER's cell phones were seized by APA and placed into APA evidence.

32. Based on information provided by other investigators, your affiant recognizes that the rifle firearm WYSINGER posed with was not manufactured in Ohio and meets the definition of a firearm as defined in Title 18, United States Code (U.S.C.), Chapter 44, Section 921(a)(3).

## IV. SEARCH PROCEDURE

33. In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Facebook to assist to agents in the execution of this warrant. In executing this warrant, the following procedures will implemented:

   a. The search warrant will be presented to Facebook personnel who will be directed to the information described in Section II of Attachment A;

   b. In order to minimize any disruption of computer service to innocent third parties, Facebook employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

34. Facebook employee will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

35. Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Facebook employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## V. CONCLUSION

Based on the above information, I respectfully submit that there is probable cause to believe that evidence of violations of the **Subject Offense** are located within one or more computers and/or

servers found at Facebook, headquartered at 1 Hacker Way Menlo Park, California 94025. By this affidavit and application, I request that the Court issue a search warrant directed to Facebook allowing agents to seize electronic evidence and other information stored on Facebook servers following the search procedure described in Attachment A and the Addendum to Attachment A.

*Daniel Van Vorhis*
Daniel Van Vorhis TFO ATF

Sworn to via telephone on __28th__ day of __July__, 2021 after submission by reliable electronic means.
Fed.R.Crim.P. 4.1 and 41(d)(3).

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE